22-2697 Zurich v. Lloyd's. Alright, is it Mr. Piper?  Mr. Piper, you've reserved two minutes for rebuttal. I have. You may proceed. Good morning, Ma'am Police Department. Steve Piper on behalf of, or what's fine on behalf of those Certain Interested Underwriters at Lloyd's London. Judges, I'll first start by pointing out what the district court said in its decision, of which we're now appealing from, that this case is about the application of the anti-subrogation rule. Who would submit to district court, of course, got that exactly correct. This is about the application of the anti-subrogation rule. What we have here is a substantial difference of how that rule is applied. Counsel to my right has submitted substantial papers that argues for a mechanical application of the anti-subrogation rule. Every time there's a contractual indemnity clause at issue, the anti-subrogation rule applies and we move no further. We, of course, take a different view of that. And that nuance is the reason that we're here. Can I ask about the structure of the state court proceeding? Sure. So you've got the employees, Gant's employee, and the named defendants are Port Authority and LaGuardia? That's correct, Judge. And the insurance companies under the main policy are involved, are in the case or not in the case? The caption in the underlying case was Quentin Mayo versus LaGuardia, Gateway Authority, and the Port Authority of New York, New Jersey. Those are the only parties to that action. So the carriers are not in that underlying action, if that was what you're asking. Not, but, and there's, you have interests in the underlying action, needless to say. Well, of course. Certainly. Let me take a moment to sort of describe, I guess, the towers of government. You want counsel in the underlying action representing the named defendants to bring the subrogation claim, right? It's not a subrogation claim, per se. Indemnification. Yeah, it's a claim for, it's a claim for indemnification. In this case, common law indemnification. Look, underwriters recognize this, right? Underwriters is in the tower. I'm sorry, I think Judge Calabresi has something. Yes, Judge. You began by saying that the anti-subrogation clause seems to be there, but you say it should be read differently. Do you have any cases in York that do what you suggest now for the first time? Any cases? Well, Judge, I do to this point, and I would also start by saying I don't think my opponent has any cases that say that it doesn't apply the way we say it applies, right? If you look at the history of the anti-subrogation rule coming out of the Bison Ford decision from the Court of Appeals, and most importantly, probably in this context, the North Star decision, which the Court of Appeals issued in the early 90s. Court of Appeals is talking about something, they're talking about trying to get rid of cases against me. I want to know if in all the time you have cases that support the position that Lloyds is bringing here for the first time. The district court made quite clear that it said this is a new and bizarre argument and wasn't supportive. I want to know what you can tell me against that very clear statement. Well, very good. Thank you, Judge. Let me try again. The North Star decision speaks to the question of whether there's a conflict of interest with the defense counsel in proceeding with an action. And the conflict of interest that they're talking about in North Star is this conflict of interest of you're choosing one path over another, right? You're taking a position where you're electing not to proceed with a contractual indemnity claim and only proceeding with a common law indemnity claim. And you're doing that solely so that you can shift the risk to the insurance policy which covers the common law indemnity claim, right? That's what North Star is saying. North Star doesn't create a mechanical rule that just because there is a contractual indemnity clause that you can't proceed. So let me try to put it to the court this way. We would agree, using binary logic, we would agree that if you have coverage under the CGL policy for contractual indemnification and if you also have a valid contractual indemnification clause, the anti-segregation rule applies to block that action, right? We would agree with that. There's no argument against that. Our position, Judge, and it's born out of what the Court of Appeals says in North Star and what this court said in its Ohio Casualty case, our position is if you don't have both of those elements, then you don't have an application of the anti-segregation rule. So for instance, on one side, if you look at the North Star Trilogy, the fourth case in the North Star opinion, yes? I don't know. Wouldn't you think that that situation would have come up before and somebody else would have made their argument and some court would have given it some effect? It's been a long time. You've just come up with something and you're telling us, gee whiz, there was room for it. But no one has done it. So why did we go that way? Judge, the reason I would submit to the court that no one has done it is because invariably, you don't have losses in that insurance clause in construction contracts, right? Most of them simply have a contractual indemnification clause that you can bring at any time and if that contractual indemnity clause is there, you can't proceed. That's Blackwater law and it's been that law forever. What we have here is a contractual indemnification clause which has a losses net insurance. That's the second half of the district court's decision and that really is the crux of our argument, Judge. And all due respect, don't get lost in the concept of a mechanical application of the rule. You have to read the contract, right? So again, unless you have a valid contractual indemnification clause and coverage on the other side, you don't have anti-segregation issues because you don't have a conflict of interest. In other words, you can't steer it to one away from a different cause of action because you only have one cause of action. In this case, the only viable cause of action is the common law indemnity claim. So the only reason you haven't seen this, Judge, before is because we are confronted with contractual indemnity clauses that are losses net of insurance. So the real question here... Can I ask? I want to just circle back to where I started because we moved away from it. But the North Star point is relevant. Does defense counsel have a conflict here? He may, in fact, have a conflict. Could you intervene and bring the claim? We, in fact, asked to... The underwriters indicated that we would take over, appoint counsel who did not have a conflict. You think he does have a conflict? I think it's possible... And you have to, otherwise there's no adversity here, right? That's exactly correct. The counsel himself acknowledged that he represents Skanska in other actions involving this same policy. So he did have a conflict. And we recognize that. Wait, why can't you intervene and bring the claim to the State Court? Our position is that that's where this case should be litigated. The viability of the... Wait, why can't you intervene and bring the claim? If your interest is to bring the claim, why not... And it just helps me to understand the structure here in thinking about adversity and jurisdiction. Why not do that? That seems the obvious move. Because, Your Honor, it is not yet ripe to be brought. That's why. And why not? Because there hasn't been a determined... The underlying action, to my understanding, there is a settlement in principle, but it has not yet been resolved. If it's not right there, how is it right here? I would agree with you, Judge, but we're the defendants in the case. If you'll note, Your Honor will note that at Docket 9, our answer, the first affirmative defense, is that there's not a judiciable actual controversy under 28 U.S.C. 2201. This is exactly the point. We think this issue, the viability of that indemnity clause, should be litigated in the underlying action with the parties who are party to the contract. We do not have an actual controversy with Zurich at this point. We're not challenging Zurich's coverage, and Zurich, I don't think, is challenging our coverage. Really, it turns on whether or not this indemnity clause is viable. And if it is, then the anti-segregation rule applies. And if it's not, then we maintain it doesn't. The usual way to test that is to bring the claim. That's exactly correct, Judge. But it's not right. That is, I would fully agree with you, with the court, yes. Okay. Thank you. Thank you. Mr. Darwick. Good morning. Gabe Darwick for Plaintiff Appellee Zurich. I'm going to begin where you left off, Judge Nathan. Could the action be brought in the underlying state court proceeding? And I'm somewhat dismayed by the disclosure made today. As my understanding, preparing for this argument, the underlying case has settled for $14.5 million. That action is in the process of being finalized, settlement papers concluded, and a stipulation of discontinuance filed. That is not a location in which the claim can now be brought. Now, turning to the ripeness argument, Your Honor, as this circuit has regularly held, litigation over insurance coverage has become the paradigm for asserting jurisdiction, despite future contingencies that will determine whether a controversy ever actually becomes real. This turns, then, on the practical likelihood the contingency will occur. In evaluating the practical likelihood in this case, we have to focus on what the anti-subrogation rule does. The anti-subrogation rule stops an insurer from the very attempt to bring a subrogation action through its insured, against its insured, whether it's through a common insured or whether it's in its own name. So the focus for this court in determining whether it is a case of actual controversy Counsel, that is what is going on. Why on earth should we listen to your claim against them in the first instance? Why not wait for them to bring this seemingly absurd, in your view, case in the state court? And if they bring the case in state court, go after them for sanctions because it is so absurd. Grant that you're coming in and trying to get us to understand New York law and new arguments about New York law until you have actually been sued. Well, Your Honor, as the court held, sorry. I'm very strongly on your way, but why on earth should a federal court get involved in this issue of state law? The reason, Your Honor, is because the damages that were going to be done or the damage that was going to be done if underwriters was allowed to cause LaGuardia and Port Authority to sue Skanska would have been immense. It would have required them to replace the law firm that was defending LaGuardia and Port Authority for three years. It would have required Skanska. So there was a conflict? Defense counsel was conflicted? Yes. Defense counsel would have been conflicted for two reasons, Your Honor. One, because his professional judgment precluded him from bringing the claim. Just like I think Judge Calabresi may feel, this was an absurd position for underwriters to take in defense counsel's view as well. So he could not bring a third-party action in LaGuardia and Port Authority's name that he believed lacked merit. Can I ask, because it's new information, I think, to us that the action is settled. Isn't the – I mean, at some point, right, this turns to mootness, doesn't it? I mean, you're asking whether a claim can be brought in a suit that is closed? Is that right? No, Your Honor, because what's going to happen now is underwriters is going to do what they wanted to do all along. They are going to assert the claim for common law indemnity, and they'll have to do it in their own name now because they are the one who is going to pay $14.5 million, and they're going to bring it against Skanska, and they're going to bring it against Zerk. The only difference, Your Honor – Then it gets resolved there, doesn't it? But the only difference is it's a name change. They have been trying to do this for the better part of two years, and the district court's decision to take up jurisdiction in this case prevented them from causing a litany of damage that would have occurred, from throwing defense counsel off the case, from causing Skanska to – That is the most unusual use of the federal courts that I've come across. Well, Your Honor, I will tell you – I haven't been at it as long as my colleagues, but it's – Your Honor, it may be unusual, but it does fit well within the standard this court utilizes to determine subject matter jurisdiction. In Admiral v. Niagara, this court entertained a coverage action – Judge Calabresi authored this opinion – in which there was nothing more than a threat of litigation against the insured. And the court said a threat of litigation is sufficient to exercise jurisdiction. Here, let's look through the – But the context of Admiral was that that threat was really quite real. I mean, we were very close in Admiral, frankly, and frankly said, okay, but just how far does one go? So let's review the facts here, Your Honor, because I think we do have a very real dispute. In fact, underwriters describe this dispute in his argument as a substantial difference of opinion on a legal issue. So the facts here, underwriters demands that defense counsel analyze whether the anti-segregation rule applies. Defense counsel says yes. Underwriters asks Zerk for its opinion. Zerk says yes, of course it applies. Underwriters then proactively disclaims coverage to its insured for common law indemnity claims that have not yet been asserted. Underwriters demands that Zerk, quote-unquote, surrender the defense to them so that they can prosecute that third-party claim in the name of LaGuardia and Port Authority. Underwriters threatens immediate legal action against Zerk if they do not surrender the defense. And underwriters suggests that Zerk will be liable for a bad faith claim. And I want to refer this court to a recent decision by the Appellate Division First Department. It's Starr v. Zerk. It's cited in our papers. And it shows exactly what happens if Zerk and other insurers do not get out ahead of these types of disputes. In that case, just like here, the excess insurers demanded that Zerk allow them to prosecute an action against a mutual named insured under a contractor's controlled insurance program. Zerk said no. Anti-subrogation rule applies. What do underwriters do, or excuse me, the excess insurers in that case? They commence a bad faith suit against Zerk. Zerk is now defending a case against extra contractual damages for preventing an excess insurer from wrongly filing a suit that is barred by the anti-subrogation rule. And Zerk prevails both before the trial court and the Appellate Division First Department in concluding that the anti-subrogation rule barred that excess insurer's case. So the practical likelihood that there was going to be a real dispute here was high. The district court had jurisdiction, and it did not abuse its discretion in entertaining it. I want to go to something that- If it were brought now, would there be jurisdiction? I mean, I think there would be jurisdiction. I would have to think about kind of some res judicata issues because we've already kind of litigated this case. But, you know, if they pay out $14.5 million and they want to bring the suit again, I guess they could, but I think there's a merits-based decision that stops them. So if this court were to hold that the district court never had jurisdiction, then, yeah, theoretically they could bring the case. But as I've said, I think that applying the practical likelihood standard here, there is a case of actual controversy, and the district court was right to entertain it. Going to the merits briefly and to Judge Calabresi's questions, in the 40 years since the anti-subrogation rule was established, New York State and federal courts have regularly addressed it to this fact pattern. The unwavering conclusion has been that it bars the attempt by the insurer to subrogate its insurer. Never once in this 40-year history has a court performed a backwards analysis of whether a contractual indemnity claim will succeed before determining whether the anti-subrogation bars it. The district court recognizes this case for what it is, a straightforward one in which underwriters are attempting to muddy the waters. It appropriately granted summary judgment to Zurich, and this court should affirm that decision. Unless there's any further questions, I will submit. Thank you. Thank you. And Mr. Pembrey, you have two minutes. Thank you, Judge. I'll try to be as prompt as I can. With respect to the rightness to bring the indemnity claim in the underlying action, the reality is that the indemnity claim is very clear, right? It's 21.1A and 21.4. If underwrite, if Skanska LaGuardia Gateway Partners, if they incur a loss, they will then have a contractual indemnity claim. I don't know the answer if they have or will incur a loss. I do. I have put forward the fact that there is an agreement in principle. The settlement documents are being hammered out. It is a $14.5 million agreement of which underwriters can pay. But I don't represent LaGuardia Gateway Partners, and I don't represent the Port Authority of New York and New Jersey in this case. I represent their insurer, certain underwriters of Lloyd's London. So I can't tell you unequivocally that there will be a potential, a plenary action brought for indemnity based on common law indemnification. The reason I say that is because if there is real exposure incurred by LaGuardia Gateway Partners and or the Port Authority of New York and New Jersey, then I would agree with my opponent and Judge Calabresi that it would be blocked by the anti-subrogation rule. But if there is no exposure, then there is no indemnity claim. So if there is no indemnity claim, there is no basis for there being a conflict of interest, right? It's only the conflict of interest in Northstar, the conflict of interest that this court addressed in Ohio Casualty, is only where you make a decision to purposefully not pursue a contractual indemnity claim which would have possibly would have merit. It's where you only go for the common law indemnity claim and eschew the possibility of a contractual indemnity claim. If you don't have one, you don't have a conflict of interest in deciding whether or not to bring it. But ultimately, that is an issue I submit for state court, right? And it's exactly why our position had been what it was, that underwriters is being sued in a case for an action it hasn't yet taken. And in fact, it can't even fully assess until finality happens in the underlying action. What we asked for in the letter was we asked for counsel to take a look at the possibility of whether or not this was a viable claim. And he said he could not, defense counsel could not, because of an ethical consideration. He later then did, but underwriters pointed out, look, you have an obligation to the insured to look for evidence of risk transfer. That's it. There was no threat of any allegation, any threats of bad faith lawsuits. There were letters that speak for themselves. There are, I think, 464 in the record, or 646 in the record. The court can review those. Mr. Dorek and I have a difference of opinion on those, but I am over my time. Thank you very much for hearing me. Thank you. Both matters submitted and will be reserved to him.